UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| EDWARD CLARK,<br><br>          Plaintiff,<br><br>     vs.<br><br>UNUM GROUP and THE PAUL REVERE LIFE INSURANCE COMPANY,<br><br>          Defendants. | 4:20-CV-04013-KES<br><br>ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

Plaintiff, Edward Clark, filed suit against Unum Group and The Paul Revere Life Insurance Company alleging claims of bad faith and aiding and abetting bad faith, breach of contract and interference with contract, and alternative claims under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. ch. 18. Docket 1. Defendants move for partial summary judgment on Clark's state-law claims and to strike his jury demand. Docket 13. Clark opposes the motion, or in the alternative, requests additional time for discovery. Docket 20. For the following reasons, the court denies defendants' motion for partial summary judgment.

**BACKGROUND**

The parties' dispute concerns a long-term disability policy issued by Paul Revere to Clark in 2001 while Clark was employed by Sanford Health Systems.[1]

---

[1] Sanford Health Systems was known as Sioux Valley Health Systems when Clark began working there in 2001. Docket 18 at 2 n.1. To reduce the

Docket 18 ¶¶ 1-2. In October 2015, Clark suffered a bilateral pulmonary embolism and began to regularly experience fatigue and shortness of breath. Docket 1 ¶¶ 29-31, 39. His condition led to difficulty maintaining his prior occupation as an acute care physician, and he submitted a claim for benefits under the long-term disability policy. *Id.* ¶¶ 44, 46. Because of issues settling his claim, Clark filed suit against Paul Revere and Unum alleging state-law bad faith and breach of contract claims and alternative claims under ERISA. Docket 1 ¶¶ 83-113.

Defendants move for summary judgment on Clark's state-law claims, asserting they are preempted by ERISA. Docket 11 at 6-16. The parties dispute nearly every fact relating to whether the state-law claims are preempted by ERISA. *See* Docket 18.

**STANDARD OF REVIEW**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact.").

Once the moving party meets its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either by "citing to

---

possibility of confusion, the court will refer to Clark's employer as Sanford Health Systems, regardless of what it was called at the time.

2

particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). For purposes of summary judgment, the facts and inferences drawn from those facts are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

ERISA's civil enforcement scheme preempts state-law causes of action in determining rights under an ERISA plan. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52-55 (1987). Thus, plaintiffs are precluded from bringing state-law claims regarding plans governed by ERISA. *See id.* "The existence of an ERISA plan is a mixed question of fact and law . . . ." *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254, 256 (8th Cir. 1994). Courts perform a two-step analysis to determine whether a plan is governed by ERISA. *Berry v. Provident Life & Accident Ins. Co.*, No. 4:05-cv-04139-KES, 2007 WL 9772747 at *2 (D.S.D. Mar. 6, 2007). First, the court determines whether the plan falls within ERISA's safe-harbor provision, 29 C.F.R. § 2510.3-1(j). If a plan does not fall within the safe-harbor provision, the court must determine whether the

3

scheme at issue qualifies as an "employee benefit plan" that was "established or maintained" by an employer. *Berry*, 2007 WL 9772747 at *2 (citing *Nw. Airlines, Inc. v. Fed. Ins. Co.*, 32 F.3d 349, 354 (8th Cir. 1994)).

### I. Whether a Genuine Issue of Material Fact Exists as to the Plan's Satisfaction of the ERISA Safe-Harbor Provision

First, the court addresses whether there is any dispute of material fact as to the plan falling under ERISA's safe-harbor provision, 29 C.F.R. § 2510.3-1(j). The safe-harbor provision states that ERISA does not govern a group or group-type insurance plan offered by an insurer to employees or members when:

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). For the safe-harbor provision to apply to a plan, it must meet all four of the provision's requirements. *Dam v. Life Ins. Co. of N. Am.*, 206 Fed. App'x 626, 627 (8th Cir. 2006). Because ERISA preemption is a defense, the defendant bears the burden of showing that a plan does not meet the safe-harbor requirements. *Berry v. Provident Life & Accident Ins. Co*, 2007

4

WL 1795837 at *4 (D.S.D. June 19, 2007) (citing *Merrick v. Nw. Mut. Life Ins. Co.*, 2001 WL 34152095 at *7 (N.D. Iowa 2001). Here, defendants do not dispute that the second and fourth requirements are satisfied by the plan. Docket 11 at 7-10. Thus, the court discusses the first and third requirements.

### A.   Does a genuine issue of fact exist as to whether Sanford contributed to the plan?

#### 1.   Whether Sanford directly contributed to Clark's plan

The first prong of the ERISA safe-harbor provision requires that the employer make no contributions to the plan. 29 C.F.R. § 2510.3-1(j)(1). Defendants assert that Sanford was responsible for paying 100% of Clark's premium. Docket 14 ¶ 12; Docket 18 ¶ 12. In support of its argument, defendants point to an application for coverage that Clark signed on May 23, 2001. Docket 11-4 at 4. The form stated that 100% of requested coverage would be paid for by the employer. *Id.* Clark also acknowledged in the application that premiums Sanford paid on his behalf would be included in his taxable income. *Id.* at 13. A February 5, 2007, agreement between Sanford and Unum states that Sanford's obligation under the plan is "[t]o pay in full the required premiums (100% Employ<u>er</u> Pay) for such policies and to remit such payments to [Unum] when due." Docket 11-2 at 1 (emphasis in original).

Clark asserts that Sanford did not contribute to the plan. A letter from a Paul Revere underwriting consultant states that Sanford withdrew from the plan as of December 3, 2008. Docket 19-6. And a form dated December 17, 2016, that was filled out by Sanford as part of Clark's initial claim for disability indicates that Sanford did not, "as employer, pay any portion of [Clark's]

5

Individual Disability insurance premiums[.]" Docket 19-5 at 5. Clark asserts that this form indicates that Sanford deducted Clark's premiums from his pay, rather than paying the premiums itself, and that Clark did not pay any portion of the premium with pretax dollars. Docket 18 ¶ 12; Docket 19-5 at 5. Finally, an "Action Plan" regarding Clark's disability claim stated that his plan was "without ER sponsorship," that "[t]here [were] no indications that an ER-sponsored plan exist[ed]" and that Sanford is not involved in payment of Clark's premiums. Docket 19-4. That document also states, however, that it "appear[ed] the premiums were paid through the ER" and that "it appear[ed] appropriate to consider this claim under ERISA." *Id.* Clark also points to a portion of his application for coverage that states that employer sponsorship is 20%, not full payment as defendants assert. Docket 11-4 at 8.

Viewing the evidence in the light most favorable to Clark, the non-moving party, a genuine factual issue exists as to whether Sanford contributed to Clark's disability plan. While defendants point to evidence that the parties agreed when Clark initially took out the policy that Sanford would pay the cost of premiums, Clark provided evidence that more recently, Sanford withdrew from sponsorship of the plan and that Sanford did not pay any portion of Clark's individual disability insurance premiums. These facts give rise to a genuine issue of material fact as to whether Sanford contributed to the plan.

        2.     Whether the discount Clark received on his plan through Sanford is a "contribution" to the plan

Defendants assert that a discount Clark received on his premium is evidence that Sanford contributed to the plan. Docket 11 at 3-4; *see also*

6

Docket 18 ¶¶ 8-10; Docket 11-4 at 20. Defendants assert that this 20% "Select 20 Annual Premium" discount was available when the employer paid 50% or more of the individual premium. Docket 11 at 3-4; *see also* Docket 11-2 at 4. As discussed above, a genuine issue of material fact exists as to whether Sanford actually paid any part of Clark's premiums. But defendants assert that even if Sanford paid no portion of the premiums themselves, the discount alone is a "contribution" under the first prong of the safe-harbor provision. Docket 11 at 9.

Defendants point to three district court decisions holding that a negotiated discount alone constitutes a "contribution," and urges this court to adopt the same rule. *Id. See Bommarito v. Nw. Mut. Life Ins. Co.*, 2018 WL 3537118, at *4 (E.D. Cal. July 23, 2018) ("By facilitating discounted premiums through a multi-life premium discount, XCEL 'contributed' to the program, regardless of whether it actually paid for the premiums or not."); *Henderson v. Paul Revere Life Ins. Co.*, 2013 WL 1875151 (N.D. Tex. May 6, 2013) ("Courts in the Fifth Circuit and elsewhere have held that, even when employees pay their own premiums, an employer nevertheless 'contributes' for purposes of the safe-harbor provision if the employees benefit from a rate structure or premium discount the employer was able to negotiate in obtaining group benefits."); *Healy v. Minn. Life Ins. Co.*, 2012 WL 566759, at *5 (W.D. Mo. Feb. 21. 2012) ("[T]he 10% discount attributed to Plaintiff by virtue of [employer's] agreement to transmit Plaintiff's premium payments on the Policy is a 'contribution' " sufficient to remove the policy from the safe-harbor provision's protection).

Clark notes that courts have also found that a discount alone is not a "contribution" under the safe-harbor provision and argues that this court should adopt that approach. In *Gooden v. Unum Life Insurance Company*, the court found that when a discount is merely a standard offer from the insurance company and not negotiated by the employer on behalf of employees, the discount is not a "contribution" under the first safe-harbor criterion. 181 F. Supp. 3d 465, 471-72 (E.D. Tenn. 2016). Another court also found that discounts generally are de minimis contributions that do not by themselves constitute "contributions." *See Letner v. Unum Life Ins. Co. of Am.*, 203 F. Supp. 2d 1291, 1300-01 (N.D. Fla. 2001) (a 15% discount obtained through employer was a de minimus and indirect contribution that did not constitute employer contribution).

The court declines to adopt a rule that any discount, whether negotiated or offered as a matter of course, is a "contribution" under the safe-harbor provision. In *Healy*, the only district court decision within the Eighth Circuit, the court found that the discount was "a benefit [the plaintiff] could not have received as an individual" and thus was a contribution on the part of his employer. 2012 WL 566759, at * 5. This court, however, disagrees that a discount offered by an insurance company to a company's employees is automatically a "contribution" by the employer. That rule would consume some of the protections under the "sole function" prong of the safe-harbor provision, which allows employers to deduct premiums from payroll and have other involvement with plans while still falling under the safe-harbor provision. *See*

8

29 C.F.R. § 2510.3-1(j); *Gooden,* 181 F. Supp. 3d at 475 ("There is no reason why the combination of two permissible actions—payroll deduction by the employer and a group discount from the insurer—would remove an insurance policy from the safe harbor."). The court finds the analysis in *Gooden* persuasive. 181 F. Supp. 3d at 471-75. The *Gooden* court held that "a non-negotiated group discount that applies only because premiums are paid through payroll deduction is not a 'contribution' under the first" safe-harbor criterion. *Id.* at 471-72. But it left open the question of whether a negotiated discount is a "contribution." *Id.* at 474.

Here, defendants assert that Clark's discount was issued because Sanford paid 50% or more of Clark's premium. Docket 11 at 4; *see also* Docket 11-2 at 4. But genuine issues of fact exist as to whether Sanford paid any of Clark's premium. Defendants refer to the discount as "negotiated" by Sanford. Docket 11 at 8. But defendants do not point to evidence in the record showing the discount is "negotiated." The evidence of the discount itself appears to be standard marketing material provided by Unum Group when it educates employers on various available plans. *See* Docket 11-2 at 4. Absent evidence that the discount was negotiated by Sanford for Clark's benefit, without reaching the question of whether negotiated discounts constitute a "contribution," the court finds summary judgment inappropriate on the question of whether Sanford "contributed" to the plan because of the 20% discount alone.

**B.     Does a genuine issue of material fact exist as to whether Sanford exceeded the sole function requirement?**

The third prong of ERISA's safe-harbor provision requires that:

> The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer[.]

29 C.F.R. § 2510.3-1(j)(3). Defendants argue that Sanford's function exceeded the "sole function" requirement because it endorsed the plan as an "Employer Sponsored Multilife Agreement." Defendants point to an agreement between Unum and Sanford executed on February 5, 2007, that refers to "a Multilife Employer Sponsored plan of individual disability insurance." Docket 11-2 at 1. Clark argues that nothing in that agreement establishes that it applied to Clark's policy. Docket 18 ¶ 12. Clark also argues that the letter from a Paul Revere underwriting consultant states that Sanford withdrew from that agreement as of December 3, 2008. Docket 18 ¶ 12; Docket 19-6. The Employer Sponsored Multilife Agreement allows for termination by either party with 30-day written notice. Docket 11-2 at 1.

Defendants also point to the same evidence it relied on to support its argument under the first prong of the safe-harbor test—that Clark agreed when he applied for the disability policy that 100% of requested coverage would be paid for by the employer. Docket 11 at 9-10; Docket 11-4 at 4. Defendants' argument that the evidence shows there is no genuine issue of material fact as to whether Sanford's role exceeded the "sole function" requirement fails. Clark raised a genuine issue of material fact as to whether, if his policy fell under the

Employee Sponsored Multilife Agreement, that agreement was terminated and no longer applied to Clark's policy when he filed his disability claim. Thus, material issues of disputed fact exist on the issue of whether the policy falls under ERISA's safe-harbor provision.[2]

## II. Whether the Plan is an "Employee Benefit Plan" that was "Established or Maintained" by Sanford

Next, the court addresses whether the plan qualifies as an "employee benefit plan" that was "established or maintained" by an employer. *Berry*, 2007 WL 9772747 at *2 (citing *Nw. Airlines, Inc.*, 32 F.3d at 354). To determine whether a plan is an "employee benefit plan" established or maintained by an employer under ERISA, courts determine "from the surrounding circumstances [whether] a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 629 (8th Cir. 2001) (quoting *Harris v. Ark. Book Co.*, 794 F.2d 358, 360 (8th Cir. 1986). Here, there is a genuine issue of material fact as to who paid for Clark's plan. Thus, a genuine issue of material fact exists as to whether a reasonable person can ascertain the source of financing for the plan. Even if Clark had not raised a genuine

---

[2] Defendants also assert that Sanford unilaterally handled all aspects of administering the policy and that Clark was unaware of the policy's existence when he claimed disability. Docket 11 at 10. Defendants do not cite to materials in the record supporting this claim. Thus, the court does not consider that claim as summary judgment evidence. *See* Fed. R. Civ. P. 56(c)(1)(A).

11

issue of material fact as to whether the plan falls under ERISA's safe-harbor provision, summary judgment would be inappropriate here.

## CONCLUSION

Clark showed that there is a genuine issue of material fact as to whether the plan at issue is governed by ERISA. The issue of ERISA preemption is a mixed question of law and fact. *See Berry*, 2007 WL 9772747 at *2. In similar circumstances, the court has held evidentiary hearings to resolve mixed questions of law and fact. *See, e.g., id.* at *3. The court will hold a hearing to determine the threshold issue of whether Clark's plan is governed under ERISA, but it can only do so after discovery on this issue is completed. Thus, it is

ORDERED that defendants' motion for partial summary judgment (Docket 13) is denied. It is

FURTHER ORDERED that an evidentiary hearing will be held in this matter to determine whether the plan is governed under ERISA and state-law claims are preempted after discovery is completed.

DATED February 19, 2021.

                                    BY THE COURT:

                                    */s/ Karen E. Schreier*
                                    KAREN E. SCHREIER
                                    UNITED STATES DISTRICT JUDGE