UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| EDWARD CLARK,<br><br>                    Plaintiff,<br><br>        vs.<br><br>UNUM GROUP, THE PAUL REVERE<br>LIFE INSURANCE COMPANY,<br><br>                    Defendants. | 4:20-CV-04013-KES<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART PLAINTIFF'S<br>SECOND MOTION TO COMPEL<br><br>[Docket No. 101] |

**INTRODUCTION**

This matter is pending before the court on plaintiff's second motion to compel the production of documents.  Docket No. 101.  Defendants resist the motion, and plaintiff has filed a reply.  Docket Nos. 114 & 118.  This matter has been referred to this magistrate judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 57.11B.

**FACTS**

The parties' dispute concerns a long-term disability policy issued by the Paul Revere Life Insurance Company to Dr. Edward Clark in 2001 while he was employed as an acute care physician by Sioux Valley Health Systems, now Sanford Health Systems.  In October 2015, Dr. Clark suffered a bilateral pulmonary embolism and began regularly experiencing fatigue and shortness of breath.  See Docket No. 1 at ¶¶ 29-31, 39.  While receiving treatment for his

pulmonary blood clots, he learned he has an autoimmune disorder that predisposes him to blood clotting.  Docket No. 105 at p. 15 (plaintiff's brief at page 3).  His conditions caused difficulty performing his job duties, and he submitted a claim for benefits under the long-term disability policy on November 29, 2016.  See Docket No. 1 at ¶¶ 43-44, 46; Docket No. 114 at p. 12 (defendant's brief at p. 7).  Defendants denied Dr. Clark's claim and he appealed; defendants denied his appeal on May 10, 2017.  Docket No. 114 at p. 13 (defendant's brief at p. 8).  Dr. Clark filed this lawsuit against Paul Revere and Unum alleging state-law bad faith and breach of contract claims and alternative claims under ERISA.  Id. at ¶¶ 83-113.

Dr. Clark served defendants with 47 document requests on July 11, 2022.  Docket No. 105-1.  Disagreements ensued over defendants' responses to those requests.  After the parties met and conferred, Dr. Clark agreed to certain concessions and defendants disclosed certain documents.  Docket No. 104.  Twenty-nine document requests remain over which the parties could not reach agreement and it is these requests that are the subject of Dr. Clark's second motion to compel.  Docket No. 105 at p. 13 (plaintiff's brief at p. 1).

## DISCUSSION

**A.    Standards Governing Discovery**

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> *Scope in General.*  Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the

issues at stake in the action, the amount in controversy, the parties'
relative access to relevant information, the parties' resources, the
importance of the discovery in resolving the issues, and whether the
burden or expense of the proposed discovery outweighs its likely benefit.
Information within the scope of discovery need not be admissible in
evidence to be discoverable.

See Fed. R. Civ. P. 26(b)(1).

If a party fails to respond to a proper request for discovery, or if an
evasive or incomplete response is made, the party requesting the discovery is
entitled to move for a motion compelling disclosure after having made a good-
faith effort to resolve the dispute by conferring first with the other party.  See
Fed. R. Civ. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad.  See 8
Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2007 (3d ed.
Oct. 2020 update).  The reason for the broad scope of discovery is that
"[m]utual knowledge of all the relevant facts gathered by both parties is
essential to proper litigation.  To that end, either party may compel the other to
disgorge whatever facts he has in his possession."  Id. (quoting Hickman v.
Taylor, 329 U.S. 495, 507-08 (1947)).  The Federal Rules distinguish between
discoverability and admissibility of evidence.  FED. R. CIV. P. 26(b)(1), 32, and
33(a)(2) & (c).  Therefore, the rules of evidence assume the task of keeping out
incompetent, unreliable, or prejudicial evidence at trial.  But these
considerations are not inherent barriers to discovery.

Discoverable information itself need not be admissible at trial; rather, the
defining question is whether it is within the scope of discovery.  See FED. R. CIV.
P. 26(b)(1).  Additionally, the court may limit the frequency and extent of

3

discovery.  See Fed. R. Civ. P. 26(b)(2); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

The advisory committee's note to the 2000 amendments to Rule 26(b)(1) provide guidance on how courts should define the scope of discovery in a particular case:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible.

> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action.  The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision.  A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action.  For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. ... In each case, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. ... When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action.  The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

See FED. R. CIV. P. 26(b)(1) advisory committee's note.

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case.  See Fed. R. Civ. P. 26(b)(1) advisory committee's note.  "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. Mar. 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Dr. Clark was under a duty to meet and confer with defendants before filing this motion to attempt to resolve the parties' discovery disputes.  Fed. R. Civ. P. 37(a).  Dr. Clark asserts he satisfied that duty.  <u>See</u> Docket No. 104. Defendants do not dispute that Dr. Clark has satisfied this duty.  Accordingly, the motion is ripe for decision.

**B.    Specific Discovery Requests**

**1.    Request for Production No. 1 & 2**

Dr. Clark requested all documents showing loss reserves for his claim. <u>See</u> Docket No. 105-2 at pp. 2 & 3.  Defendants initially responded with a battery of boilerplate objections including "vague and ambiguous," "unduly burdensome," "confidential and proprietary," privilege, and irrelevancy, all of which objections lacked sufficient specificity to sustain them.  <u>Id.</u> at pp. 2-4. In a supplemental response, defendants stated that "subject to and without waiving [its prior] objections, after the entry of a Protective Order,"[1] defendants would produce "the Statutory and GAAP[2] reserve histories for Plaintiff's claim." <u>Id.</u> at pp. 3-5.  In discussing relevancy, defendants only argued that "courts have held that information concerning reserves is not discoverable because it is not relevant.  <u>Id.</u> at p. 2.

Dr. Clark moves to compel a response from defendants because defendants' present responses violate Fed. R. Civ. P. 34(b)(1)(C) in that they fail

---

[1] The court entered a protective order on October 14, 2022, pursuant to stipulation by the parties.  Docket No. 109.

[2] GAAP stands for "generally accepted accounting principles."

to indicate whether any documents are being withheld on the basis of the objections.  Docket No. 105 at p. 19 (plaintiff's brief at p. 7).[3]

Rule 34(b)(1)(C) provides:  "An objection must state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request must specify the part and permit inspection of the rest."

Defendants respond in their brief that requests number one and two have no time frame stated.  Docket No. 114 at p. 7.  The court agrees, but the time frame is implicit in the request.  The request is for reserves set on Dr. Clark's claim.  Dr. Clark experienced his pulmonary embolism in October 2015 and submitted a claim for benefits on November 29, 2016.  Docket No. 1 at p. 7, ¶ 46; Docket No. 114 at p. 12.  No reserve could have been set by defendants prior to November 29, 2016, because no claim had been received by them prior to that date.  The time frame for the request, then, is clearly from the date of Dr. Clark's submission of his claim to defendants (November 29, 2016) until the date defendants paid the claim.  If the claim has still not been paid, then the request is ongoing up to the present.  The court rejects defendants' assertion that request number one is not bounded by any time limits.

Defendants then assert that they have produced the documents requested, have conducted a reasonable search and not found other responsive

---

[3] Both parties' briefs contain introductory pages before the actual ordinal numbering of pages of their briefs begins.  The court's electronic docketing system, by contrast, assigns a page number to each page of a document.

documents, so Dr. Clark's request has been satisfied.  Docket No. 114 at pp. 20-23.  True, but defendants' formal response to Dr. Clark's requests number one and two leaves doubt because the documents are produced "subject to and without waiving" defendants' earlier objections.  Docket No. 105-2 at pp. 3 & 5.  The court will order defendants to produce new responses to plaintiff's document requests number one and two, signed by its counsel of record, indicating what was indicated in defendants' brief in opposition:  that defendants have conducted a reasonable search for documents in response to requests number one and two and have produced all responsive documents to Dr. Clark, withholding none pursuant to any objection.

### 2.    Request for Production No. 3

Dr. Clark's third request for the production of documents seeks any document in which his name, his claim, or his claim number is listed or referred to.  Docket No. 105-2 at p. 5.  In the meet and confer session, Dr. Clark agreed to limit this request to individual disability insurance (IDI) claims as opposed to both IDI and group disability claims.  Docket No. 105 at p. 25.

Defendants again asserted the boilerplate objections noted above with regard to requests one and two.  Importantly, defendants notes that they asserted the attorney-client privilege in the case of request number three because there was no date limitation in the request.  Thus, potentially, post-suit communications between defendants and their lawyers could be considered responsive to the request.  Those communications would clearly fall

within the protection of the attorney-client privilege.  Docket No. 114 at pp. 24-25.

With the exception of post-litigation documents exchanged between defendants and their lawyers, defendants state that there are no responsive documents regarding request number three that are currently being withheld on the basis of privilege.  Id. at p. 25.

Defendants' supplemental response to request number three again states, "subject to and without waiving Defendants' objections," defendants agreed to produce responsive documents.  Docket No. 105-2 at p. 6.  Dr. Clark moves to compel a response from defendants because defendants' present response violates Fed. R. Civ. P. 34(b)(1)(C) in that they fail to indicate whether any documents are being withheld on the basis of the objections.  Docket No. 105 at p. 26 (plaintiff's brief at p. 14).

Defendants' formal response to Dr. Clark's request number three leaves doubt because the documents are produced "subject to and without waiving" defendants' earlier objections.  Docket No. 105-2 at p. 6.  The court will order defendnats to produce new responses to plaintiff's document request number three, signed by its counsel of record, indicating what was indicated in defendants' brief in opposition:  that defendants have conducted a reasonable search for documents in response to request number three and have produced all responsive documents to Dr. Clark, withholding none pursuant to any objection.  The court accepts, without more, the assertion of privilege for documents exchanged post-suit between defendants and thier lawyers that

contain a reference to Dr. Clark, Dr. Clark's claim, or Dr. Clark's claim number.

### 3. Request for Documents No. 4

Dr. Clark's request for documents number four seeks "documents sufficient to show the methods and criteria used for setting loss reserves on disability claims from January 1, 2012 to present."  Docket No. 105-2 at p. 7. In his brief in support of his motion to compel, Dr. Clark limits his request number four to documents showing how claim reserves are set for individual claims under IDI policies.  Docket No. 105 at p. 31 (plaintiff's brief at p. 19). Dr. Clark also agreed to limit the duration of the request to January 1, 2015, to January 1, 2018.  Id.  Finally, Dr. Clark agreed to limit his request to exclude actuarial processes for determining aggregate loss or aggregate claim reserves. Docket No. 105 at p. 30 (plaintiff's brief at p. 18).

Defendants assert they has already produced a document explaining what they consider a reserve to be—Unum's 2021 Annual Report.  Docket No. 114 at p. 27 (defendants' brief at p. 22); Docket No. 114-13.

In his reply brief, Dr. Clark does not clearly address whether the document at the court's Docket No. 114-13 is a satisfactory response to request for production number four.  Docket No. 118 at p. 26 (plaintiff's brief at p. 17).  Instead, Dr. Clark said he "doesn't want a contrived answer[] from UNUM's lawyers, he wants the actual documents showing how UMUM applies the word 'reserves.'"  The page from Unum's 2021 report states in pertinent part as follows:

**Reserves for Policy and Contract Benefits**

The applicable insurance laws under which insurance companies operate require that they report, as liabilities, policy reserves to meet future obligations on their outstanding policies.  These reserves are the amounts which, with the additional premiums to be received and interest thereon compounded annually at certain assumed rates, are calculated to be sufficient to meet the various policy and contract obligations as they mature.  These laws specify that the reserves shall not be less than reserves calculated using certain specified mortality and morbidity tables, interest rates, and methods of valuation required for statutory accounting.

The reserves reported in our financial statements contained herein are calculated in conformity with [Generally Accepted Accounting Procedures] and differ from those specified by the laws of the various states and reported in the statutory financial statements of our insurance subsidiaries.  These differences result from the use of mortality and morbidity tables and interest assumptions which we believe are more representative of the expected experience for these policies than those required for statutory accounting purposes and also result from differences in actuarial reserving methods.

The assumptions we use to calculate our reserves are intended to represent an estimate of experience for the period that policy benefits are payable.  If actual experience is equal, or favorable, to our reserve assumptions, then reserves should be adequate to provide for future benefits and expenses.  If experience is less favorable than the reserve assumptions, additional reserves may be required.  The key experience assumptions include claim incidence rates, claim resolution rates, mortality and morbidity rates, policy persistency, interest rates, premium rate increases, and any applicable policy benefit offsets, including those for social security and other government-based welfare benefits.  We periodically review our experience and update our policy reserves for new issues and reserves for all claims incurred, as we believe appropriate.

Docket No. 114-13.

The court notes that the above is certainly a document "sufficient to show the methods and criteria used for setting loss reserves on disability claims."  Furthermore, since Dr. Clark has limited his request so as to exclude

11

[proprietary] actuarial processes used by defendants to set reserves, the court is hard-pressed to see how any further description could be added by defendants to the above as to the methods and criteria it uses to set reserves.

The court notes that Dr. Clark's request, as modified, is for the years 2015 to 2018 and the above statement comes from Unum's annual report for the year 2021.  Accordingly, the court will grant Dr. Clark's motion to compel to this extent:  if defendants have not already provided Dr. Clark Unum's annual reports for the years 2015 through 2018, and if those reports contain a similar description of how Unum set is reserves in those years similar to Docket No. 114-13, then defendants shall promptly provide to plaintiff the page(s) of Unum's annual reports containing the description of reserve-setting for the years 2015 through 2018.

**4.     Request for Documents No. 5**

Dr. Clark's request for production of documents number five seeks "[t]he entire personnel files and human resources files for each person that handled or participated in handling or making decisions regarding any aspect of Ed Clark's claim, as well as those persons who supervise those individuals or are in the direct chain of command above them, up to the senior-most person in the chain of command with authority over the claims."  Docket No. 105-2 at p. 8.  The request included, but was not limited to, specific named individuals:

12

Sean Tangney, Lynn McGuiness, Maureen Turner, Paul Peter, Denise Hauser, Judith L. Cohen, James H. Bress, Beth Schnars, and Maureen Griffin.[4]  Id.

The request excluded social security numbers, home street addresses, bank account numbers, or personal health information.  Id.  If defendants wanted to exclude additional information, Dr. Clark invited a discussion and stated his agreement would not be unreasonably withheld.  Id.

Defendants asserted many of the same boilerplate objections detailed above.  Docket No. 105-2 at pp. 9-10.  It also asserted that the request violated the privacy of employees who were not parties to the lawsuit, violated Massachusetts Privacy Statute, and violated an unspecified Tennessee law.  Id.

In its response in opposition to Dr. Clark's motion to compel, defendants assert that Paul Peter and Maureen Griffin were not employed by either defendant at the time of Dr. Clark's claim.  Docket No. 114 at p. 28 (defendant's brief at p. 23).  Defendants emphasize the fact that plaintiff did not list Peter and Griffin as persons with knowledge of Dr. Clark's claims in either plaintiff's initial disclosures or in interrogatory answers asking for names of witnesses.  Id. (citing Docket Nos. 114-2 and 114-3).  Defendants state that the only defendant employees listed by Dr. Clark as persons having relevant knowledge are Tangney, Turner, Cohen, Bress and Schnars.  Id. at p. 29 (defendant's brief at p. 24).  Furthermore, defendants note that the request is

---

[4] Dr. Clark's original request included Janice Kempeskie, Jo A. Allard, and Lee Ann Morin.  Docket No. 105-02 at p. 8.  Dr. Clark dropped the request for the personnel files of these three after learning from Unum that they merely performed clerical tasks.  Docket No. 105 at pp. 31-32 (plaintiff's brief at pp. 19-20).

not limited in duration.  It could require production of personnel file materials going back 20 years and continuing long after Dr. Clark's claim was finalized.  Id.

Defendants also suggest that documents relating to life insurance, benefit elections, wages or salary, retirement account, bank accounts, employee assistance programs, and more are irrelevant.  Id.  As to this last objection, the court notes Dr. Clark invited a further conversation about additional items defendant felt should not be produced.  The ball was in Unum's court to bring these matters up to plaintiff's counsel and discuss them in the meet and confer session.  Docket No. 105-2 at p. 9.

Defendants close by asking the court to limit the production in response to request number five in three ways:  (1) limit production to only the personnel files of employees directly involved in handling Dr. Clark's claim, (2) limit the request in time, and (3) eliminate categories of irrelevant and highly private documents.  Docket No. 114 at p. 30 (defendants' brief at p. 25).

Courts in this district have routinely found personnel files in insurance bad faith cases to be relevant and discoverable.  Schultz v. Sentinel Ins. Co., Ltd., 4:15-CV-04160-LLP, 2016 WL 3149686 at *10 (D.S.D. June 3, 2016); Gowan v. Mid Century Ins. Co., 309 F.R.D. 503, 512 (D.S.D. 2015); Hill v. Auto Owners Ins. Co., 5:14-CV-5037-KES, 2015 WL 2092680 at *13 (D.S.D. May 5, 2015); Burke v. Ability Ins. Co., 291 F.R.D. 343, 352 (D.S.D. 2013); Nye v. Hartford Acc. & Indem. Co., 5:12-CV-5028-JLV, 2013 WL 3107492 at *11 (D.S.D. June 18, 2013); Lillibridge v. Nautilus Ins. Co., 4:10-CV-04105-KES,

14

2013 WL 1896825 at *9 D.S.D. May 3, 2013); <u>Anspach v. United of Omaha Life Ins. Co.</u>, 5:10-CV-05080-JLV, 2011 WL 3862267 at *9-10 (D.S.D. Aug. 31, 2011).

"Personnel files may reveal an inappropriate reason or reasons for defendant's action with respect to plaintiff's claim or an 'improper corporate culture.' " <u>Nye</u>, 2013 WL 3107492 at *11 (quoting <u>Signature Development, LLC v. Mid-Continent Cas. Co.</u>, 5:11-CV-5019, 2011 WL 4321322 at *13 (D.S.D. Sept. 18, 2012)).  They may also "reveal whether a particular employee was rewarded financially for denying a certain number or percentage of claims or achieving a particular outcome with regard to claims handling." <u>Anspach</u>, 2011 WL 3862267 at *9.

With regard to the assertion of Massachusetts and Tennessee law as a barrier to discovery, defendants never identifie which individuals who fall within Dr. Clark's request number five might be able to claim the protections of those laws—defendants never identifie specific individuals as being employees within one of those states.  As the party resisting the discovery, defendants bear the burden of demonstrating that a reason or a privilege exists which would prevent the requested discovery.  <u>See</u> Fed. R. Civ. P. 26(b)(5) & (c).

The Massachusetts law cited by defendants is not absolute.  Rather, even materials which may fall within the purview of the privacy statute may be lawfully disclosed if it is reasonable under the circumstances.  <u>Skelley v. Trustees of Fessenden School</u>, No. CIV.A. 94-2512, 1994 WL 928172 at *8 (Sup. Ct. Mass. May 2, 1994).  Defendants do not acknowledge the balancing

test applicable under Massachusetts law, but blindly assert the absolute privacy of personnel files.  The court finds that, as limited below, the disclosure of the personnel files requested by Dr. Clark in request number five is reasonable under the circumstances.

As to Tennessee law, although defendants asserted this as a basis for resisting discovery in its response to request number five (Docket No. 105-2 at p. 10), there is no argument discussing Tennessee law in defendants' brief in opposition to Dr. Clark's motion to compel.  Docket No. 114 at pp. 27-30 (defendant's brief at pp. 22-25).  The court rejects Tennessee law as a basis for refusing the discovery of personnel files for the same reasons Massachusetts law was rejected:  defendants never identify any employee who is a resident of Tennessee and may take shelter under Tennessee law and they never demonstrate that Tennessee law prevents the requested discovery in this case.

Even though the court will allow the discovery, in part, personnel files contain matters that are highly personal to the employee and not relevant to the bad faith litigation.  Furthermore, the court is not convinced that personnel files of employees who were not employed by the defendant at the time the plaintiff's claim was received (Griffin and Peter) are likely to have relevant knowledge.

Accordingly, the court will order defendants to produce the personnel files of the following persons (1) the names listed in request number five *except* that defendants need not produce personnel files of Paul Peter or Maureen Griffin—in addition defendants shall produce personnel files of persons who

16

supervise those individuals or are in the direct chain of command above them, up to the senior-most person in the chain of command with authority over the claims; (2) the personnel files shall be produced from the time of the employee's first employment with defendants up to the end of 2017—documents added to personnel files after the handling of Dr. Clark's claim need not be produced; and (3) defendants must redact sensitive information such as social security numbers, phone numbers, and home addresses.

Defendants need not produce any documents relative to employees' bank accounts, retirement accounts, health insurance of any kind, life insurance, benefit elections, employee assistance counseling, or other similar documents. Information as to employees' salary or bonuses are included in the court's order to compel and must be produced.  Should defendants be uncertain about production of a particular document, they is urged to confer with plaintiff's counsel regarding the relevance of such document.  All documents produced by defendants pursuant to request number five shall be protected under the auspices of the court's protective order that was previously entered.

### 5.    Request for Documents No. 7

Dr. Clark's request for the production of documents number seven seeks documentation of all compensation paid to all individuals for whom personnel files were provided in request number five from January 1, 2012, to the present.  Docket No. 105-2 at p. 11.

Defendants argue that the ten-year time span covered by request number seven is overbroad inasmuch as Dr. Clark's claim was only open or

pending for approximately six months.  Docket No. 114 at p. 32 (defendant's brief at p. 27).  Defendants again objects to the inclusion of Peter and Griffin in the request for the reasons discussed above.  Defendants assert the same objections to the supervisors up the chain of command as well as the privacy objections noted above.  Id.

The court agrees a ten-year time span is overbroad given the circumstances of this case.  The court will allow a two-year time span before the filing of Dr. Clark's claim and a two-year window after the denial of Dr. Clark's claim.  Therefore, the court will order production of documents that show compensation (as defined by Dr. Clark in his discovery requests) for the employees whose personnel files were ordered to be produced in request number five for the period from January 1, 2015, through December 31, 2019. This order does not include compensation documents for Peter or Griffin.

### 6.    Request for Documents No. 8

Request for production of documents number eight seeks documents made available to any employee for whom production of a personnel file was requested explaining how that employee can expect to earn increases in compensation or explaining how employees are evaluated for compensation. Docket No. 105-2 at pp. 12-13.  The duration of the request is from January 1, 2012, to the present.  Id. at p. 13.

Defendants asserted a number of objections to this request.  Id. at p. 13. In response to this request and "subject to and without waiving said

objections," defendants produced documents for the approximately six-month period Dr. Clark's claim was pending.  Id. at pp. 13-14.

The court will grant plaintiff's motion to compel in part.  As with requests number five and seven, the request is limited to employees whose personnel files are ordered to be produced herein (excluding Peter and Griffin).  Similarly, the court limits the time frame in accord with request number seven. Defendants are ordered to produce responsive documents for the period from January 1, 2015, to December 31, 2019.  Furthermore, because defendants' response is ambiguous as to whether any documents have been withheld ("subject to and without waiving said objections"), the court orders defendants to provide a new written response to request number eight, signed by defendants' lawyer(s), clearly indicating whether any responsive documents have been withheld.

### 7.    Request for Documents No. 9

This discovery request seeks any documents which reflect defendants' taking into consideration the amount paid in claims in setting any employee's compensation for whom personnel files were requested in request number five. Docket No. 105-2 at p. 14.  The scope is again from January 1, 2012, to the present.  Id.

Defendants again asserted a barrage of objections.  Id. at pp. 14-15. They then stated "subject to and without waiving said objections," there were no documents responsive to this request because defendants "do not compensate individuals who handle disability claims . . . based on the amount

19

paid on claims, the number of claims denied, or the amount of any reserves that may be released upon the closure of a claim." Id. at p. 16.

Dr. Clark claims defendants' assertion that there are no documents is "demonstrably false," and points to deposition testimony of Paul Peter. Docket No. 105-16. Peter testified that his performance and the performance of the claims team he supervised was evaluated, in part, by their performance on a "recovery plan." Id. The recovery plan was a count of recoveries and a dollar figure. Id. However, Peter testified these numbers were relayed to him by his superior orally and that he communicated the numbers to his subordinates orally. Id. Thus, even crediting Peter's testimony wholly, there would be no documents showing this practice.

The court denies Dr. Clark's motion to compel documents from defendants in response to request number nine. The court reminds defendants that they are under a continuing duty to supplement their response to this request should responsive documents come to light at a later time. See Fed. R. Civ. P. 26(e)(1). Because defendants' request is ambiguous as to whether any documents have been withheld ("subject to and without waiving said objections"), the court orders defendants to provide a new written response to request number nine, signed by defendants' lawyer(s), clearly indicating whether any responsive documents have been withheld.

### 8.   Request for Documents No. 10

Request for the production of documents number ten seeks "[a]ll documents relating to goals, targets, or objectives set for any of the individuals

20

described in Request 5, or for the team they are a part of, or for the benefits department, or appeal department, or for disability claims in general." Docket No. 105-2 at p. 16. The scope of the request is, again, January 1, 2012, to the present. Id.

Defendants asserted a barrage of objections and then stated, "subject to and without waiving said objections," the performance plan templates for the year 2017 were produced. Id. at p. 18. The documents provided relate only to employees Tangney, McGuiness, Turner, and O'Neal. Id. In addition, defendants referred Dr. Clark to the Benefits Center Claims Manuals which defendants produced in response to request for documents number twelve. Id.

The court grants plaintiff's request in part. Defendants are ordered to provide responsive documents for each employee whose personnel file was ordered to be produced in response to request number five. The court excludes Peter and McGinnis from this order. The order is also limited to the time frame from January 1, 2015, through December 31, 2019. Again, the court orders defendants to provide a new response to this discovery request, signed by defendants' lawyer(s), clearly indicating whether any documents have been withheld pursuant to defendants' asserted objections.

### 9.    Request for Documents No. 11

Request for the production of document number eleven seeks "[a]ll documents relating to efforts to influence or track 'recoveries,' reduction of reserves, duration of benefits, average claim costs (indemnity), claim closures, loss rations, combined ratios, or underwriting profit for disability claims from

January 1, 2012 to present."  Docket No. 105-2 at p. 18.  Plaintiff excludes from this request "documents from individual claim files relating solely to specific individual claimants" and "documents that are solely related to efforts to increase sales."  Id.

Defendants asserted a barrage of objections and then stated, "subject to and without waiving said objections, and after the entry of a Protective Order, and to the extent the documents are still available," the Portfolio Metric reports applicable to" Tagney and McGuiness for the fourth quarter of 2016 and the first quarter of 2017 and the Weekly Tracking reports for McGuiness for the same period.  Id. at pp. 19-20.

In its response in opposition, defendants assert they do not understand the phrases "efforts to influence" and "combined ratio."  Docket No. 114 at p. 37 (defendants' brief at p. 32).  In his reply, Dr. Clark explains "efforts to influence" are merely words that a sixth-grader should understand.  Docket No. 118 at p. 40 (plaintiff's reply at p. 31).  Dr. Clark explains that "combined ratio" is a common insurance industry term defined as "the amount paid in claims plus the expenses of adjusting claims, divided by the premiums collected."  Id.  Dr. Clark points out there are thirteen decisions from this district containing this phrase and discussing it.  Id.  The court believes this issue—simple definition of terms—is something the parties could certainly have ironed out in their meet-and-confer discussions.

The court notes a protective order is now in place.  Accordingly, the court grants Dr. Clark's motion to compel in part.  Again, the request will be limited

to the period from January 1, 2015, through December 31, 2019. The request will be granted for all employees whose personnel files were required to be produced in response to request number five. Again, the court orders defendants to provide a new response to this discovery request, signed by defendants' lawyer(s), clearly indicating whether any documents have been withheld pursuant to defendants' asserted objections.

### 10. Request for Documents No. 12

This request seeks "[a]ll documents used, or available for use by any of the individuals described in Request 5 to assist, or guide them in handling disability claims or supervising or managing those who handle disability claims at any time from January 1, [2015][5] to present." Docket No. 105-2 at p. 20.

Defendants asserted thier now-familiar barrage of objections. Id. at pp. 20-21. They then stated "[s]ubject to and without waiving said objections," defendants would produce the policy of insurance issued to Dr. Clark and the Benefits Center Claims Manual in effect at the time Dr. Clark's claim was denied and at the time his appeal was denied. Id. at p. 21.

Defendants argue this request is overbroad and unduly burdensome for items other than the claims manuals. Docket No. 114 at p. 40 (defendants' brief at p. 35). Defendants explain that they have no central repository of all documents "available for use to assist or guide individuals accountable for the administration of disability claims for any part of the time period 2015 to present." See Docket No. 114-14 at p. 3, ¶ 5. Additionally, defendants have

---

[5] Plaintiff voluntarily limited its request as indicated at the meet and confer.

used and "sunsetted" numerous formats and computer systems over the period covered by request twelve.  Id.  Therefore, a search for relevant documents would require searches of archived computerized records as well as current records.  Id.  Defendants conservatively estimate as many as 4,149 employee hours might be required to attempt to locate all documents responsive to request number twelve.  Id. at p. 5, ¶ 10.

Request number twelve includes group disability policies as well as IDI. In his reply brief, Dr. Clark agreed to limit this request to documents addressing the handling of IDI claims.  Furthermore, defendants' affidavit indicates that the location where such documents are stored is known sufficient to allow defendants to run a computerized search and report how many "hits" the search yielded.  Docket No. 114-14 at pp. 2-5, ¶¶ 7-9. Therefore, as Dr. Clark points out, the majority of the employee hours defendants proffer is time spent on sorting out the relevant documents from the irrelevant documents among the "hits."  Dr. Clark suggests defendants can just turn over all documents which were "hits" and he will sort through them.

The court is unconvinced that guidance as to how to handle claims before Dr. Clark filed his claim or after the appeal on Dr. Clark's claim was denied are relevant to any claim or defense in this lawsuit.  So, as an initial matter, the court limits request twelve to documents from January 1, 2016, through December 31, 2017.  In addition, as per Dr. Clark's reply brief, the request is further limited to documents containing guidance as to how to

handle IDI claims.  These additional limitations significantly limit the locations defendants must search and the number of "hits" from those locations.

The court will order defendants to provide documents other than just the claims manuals which are responsive to request twelve if such documents were available as guidance for claims handling in IDI claims during the period January 1, 2016, to December 31, 2017.  Defendants can choose whether to produce all documents which are a "hit" for the relevant search terms before turning those documents over to Dr. Clark, or it can choose to examine those documents for relevancy before turning them over.  Again, defendants are directed to provide a new response, signed by their lawyer(s), indicating whether any documents were withheld "pursuant to and without waiving" their objections.

### 11.    Request for Documents No. 13

This request seeks "documents sufficient to identify all training or educational materials related to handling or supervising or managing disability claims, and made accessible to any of the persons described in Request 5 at any time from January 1, 2012 to present."  Docket No. 105-2 at p. 21.

After asserting a litany of objections, defendants stated that "subject to and without waiving said objections," defendants would produce the claims manuals referenced above in connection with request twelve.  Id. at p. 22.  In its brief in opposition to Dr. Clark's motion to compel, defendants again asserts it would take 4,149 hours to attempt to comply with request number thirteen.

For the same reasons stated above, the court grants in part Dr. Clark's motion to compel defendants to produce documents pursuant to request number thirteen.  The court limits request thirteen to documents from January 1, 2016, through December 31, 2017.  In addition, the request is further limited to documents containing guidance as to how to handle IDI claims. These additional limitations significantly limit the locations defendants must search and the number of "hits" from those locations.

The court will order defendants to provide documents other than just the claims manuals which are responsive to request thirteen if such documents were available as guidance for claims handling in IDI claims during the period January 1, 2016, to December 31, 2017.  Defendants can choose whether to produce all documents which are a "hit" for the relevant search terms before turning those documents over to Dr. Clark, or it can choose to examine those documents for relevancy before turning them over.  Again, defendants are directed to provide a new response to request number thirteen, signed by its lawyer(s), indicating whether any documents were withheld "pursuant to and without waiving" its objections.

### 12.    Request for Documents No. 14

Request for the production of documents number fourteen seeks "[a]ll guidance, training or reference materials made available to any of the individuals described in Request 5 relating to evaluation of subjective symptoms in determining the outcome of claims.  The scope of this Request is

for documents available from January 1, 2012 to present." Docket No. 105-2 at p. 23.

Defendants asserted their boilerplate objections and then provided the claims handling manuals referenced in request twelve "subject to and without waiving" its objections. Id. at pp. 23-24. Supplementally, defendants agreed to conduct a search, after the entry of a protective order, for any training materials for the period November 2016 through May 2017 relating to the evaluation of subjective symptoms that was available to "the DBS, Director, Lead Appeals Specialist, and Appeals Quality Control Consultant involved in the decision to deny Plaintiff's claim." Id. at p. 24.

For the same reasons stated above, the court grants in part Dr. Clark's motion to compel defendants to produce documents pursuant to request number fourteen. The court limits request fourteen to documents available to defendants' employees from January 1, 2016, through December 31, 2017. In addition, the request is further limited to documents containing guidance as to how to handle IDI claims. The court's order includes documents available to any employee whose personnel file defendants were ordered to produce in connection with request number five.

Again, defendants are directed to provide a new response, signed by their lawyer(s), indicating whether any documents were withheld "pursuant to and without waiving" its objections.

### 13.    Request for Documents No. 16

Request for the production of documents number sixteen seeks "[a]ll guidance, training or reference materials made available to any of the individuals described in Request 5 related to any obligation to give deference to the opinion of claimant's treating physician when making a determination of disability.  The scope is from January 1, 2012 to present."  Docket No. 105-2 at p. 26.

Defendants initially produced only its claims manual as referenced in request for documents number twelve "subject to and without waiving" its many iterations of objections.  Id. at pp. 26-27.  Supplementally, defendants, after the entry of a protective order, agreed to also search for and produce any training materials for the time period November 2016 through May 2017 relating to giving deference to opinions of treating physicians if those documents were available to the "DBS, Director, Lead Appeals Specialist, and Appeals Quality Control Consultant involved in the decision to deny Plaintiff's claim."  Id. at p. 27.

For the same reasons stated above, the court grants in part Dr. Clark's motion to compel defendants to produce documents pursuant to request number sixteen.  The court limits request sixteen to documents available to defendants' employees from January 1, 2016, through December 31, 2017.  In addition, the request is further limited to documents containing guidance as to how to handle IDI claims.  The court's order includes documents available to

any employee whose personnel file defendants were ordered to produce in connection with request number five.

Again, defendants are directed to provide a new response, signed by their lawyer(s), indicating whether any documents were withheld "pursuant to and without waiving" its objections.

### 14.    Request for Documents No. 22

Request for the production of documents number twenty-two seeks "[a]ll documents made available to train, guide, or assist any of the individuals described in Request 5 with respect to:  (a) unfair claims practices; (b) good faith or bad faith claim handling; (c) wrongful claims handling; (d) extra-contractual suits or damages.  The scope of the request is January 1, 2012 to present."  Docket No. 105-2 at p. 31.

Defendants produced its claims manual as referenced in request for documents number twelve and also agreed to search for and produce "any Fair Claims Settlement Practice training materials provided to Benefits Center claims professionals for the time period of Plaintiff's claim, November of 2016 through May of 2017."  Id. at p. 32.  In their brief in opposition to Dr. Clark's motion to compel, defendants represent that they also produced its Fair Claims Settlement Practices:  California Regulations Regarding Overpayments, NAIC Fair Claims Settlement Practices Model Act, and NAIC Unfair Claims Settlement Practices Model Regulations.  Docket No. 144 at p. 45 (defendants' brief at p. 40).  This production was made "subject to and without waiving" defendants' many objections.  Docket No. 105-2 at p. 32.

For the same reasons stated above, the court grants in part Dr. Clark's motion to compel defendants to produce documents pursuant to request number twenty-two.  The court limits request twenty-two to documents available to defendants' employees from January 1, 2016, through December 31, 2017.  In addition, the request is further limited to documents containing guidance as to how to handle IDI claims.  The court's order includes documents available to any employee whose personnel file defendants were ordered to produce in connection with request number five.

Again, defendants are directed to provide a new response, signed by their lawyer(s), indicating whether any documents were withheld "pursuant to and without waiving" its objections.

### 15.   Request for Documents No. 23

Request for the production of documents number twenty-three seeks "[a]ll transcripts of testimony given by any person appointed as corporate representatives of defendants or Rule 30(b)(6) witnesses, or any of the personnel described in Request 5, in cases involving extracontractual lawsuits arising out of disability claims from January 1, [2012][6] to present."  Docket No. 105-2 at p. 32.  Plaintiff agreed to limit this request to transcripts from extracontractual lawsuits involving IDI claims.  Docket No. 105 at p. 63 (plaintiff's brief at p. 51).

---

[6] Dr. Clark agreed in his reply brief to limit his request to the period from January 1, 2012 to the present.  Docket No. 118 at p. 52 (plaintiff's reply brief at p. 44).  The request originally asked for documents from 2010 forward. Docket No. 105-02 at p. 32.

Defendants produced no documents in connection with this request, asserting a plethoral of boilerplate objections, but also objecting on the basis of relevancy citing <u>State Farm v. Campbell</u>, 123 S. Ct. 1513 (2003) [sic].  Docket No. 105-2 at pp. 32-33.

Dr. Clark argues in his brief in support of an order compelling documents pursuant to request twenty-three that the District of South Dakota has routinely approved similar discovery requests in other bad faith cases, a fact defendants tacitly acknowledge.  Docket No. 105 at p.63 (plaintiff's brief at p. 51) (citing <u>Tovares v. Gallagher Bassett Serv., Inc.</u>, 5:16-CV-05051-JLV, 2020 WL 4740455 at *11 (D.S.D. Aug. 14, 2020); <u>Leichtnam v. American Zurich Ins. Co.</u>, 5:15-CV-05012-JLV, 2018 WL 4701353 at *[7] (D.S.D. Sept. 30, 2018); <u>Collins v. St. Paul Fire & Marine Ins. Co.</u>, 5:15-CV-05047-JLV, 2016 WL 5794722 at *6 (D.S.D. Sept. 30, 2016); <u>Lillibridge</u>, 2013 WL 1896825 at *8; <u>Nye</u>, 2013 WL 3107492 at *14; <u>Lyon v. Bankers Life & Cas. Co.</u>, 5:09-CV-0507-JLV, 2011 WL 124629 at *12 (D.S.D. Jan. 14, 2011); <u>Beyer v. Medico Ins. Grp.</u>, 266 F.R.D. 333, 338 (D.S.D. 2009); <u>Hoyme v. Allied Prop. & Cas. Ins. Co.</u>, 5:08-CV-05086-JLV, 2009 WL 10722466 at *8 (D.S.D. Dec. 1, 2009)).

Defendants' objection based on <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408 (2003), is misplaced for two reasons.  First, as this court recently noted, the issue at the discovery phase does not include considerations as to admissibility of evidence; that is a task left for the Federal Rules of Evidence at the trial.  <u>Tovares</u>, 2020 WL 4740455 at **5-6.  During discovery, the requesting party need only show that the discovery sought is

31

"relevant to any party's claim or defense" and the fact that the discovery is not admissible in evidence is not a bar to discovery. Fed. R. Civ. P. 26(b)(1).

Second, the Court in <u>Campbell</u> did not hold that evidence of out-of-state conduct by an insurer was irrelevant. Instead, the Court held that even lawful "out-of-state conduct may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the State" where the litigation is pending so long as "that conduct has a nexus to the specific harm suffered by the plaintiff." <u>Campbell</u>, 538 U.S. at 422. This court holds the transcripts of prior testimony sought is relevant under Rule 26.

Defendants also assert that the portion of Dr. Clark's request seeking deposition transcripts of Rule 30(b)(6) deponents is overbroad and unduly burdensome. Docket No. 114 at p. 49 (defendants' brief at p. 44). Specifically, defendants assert it will take 558 employee hours to locate such transcripts at a cost of approximately $22,878 to locate transcripts of testimony of Rule 30(b)(6) designees from prior litigation. <u>Id.</u>

The court will limit Dr. Clark's request to transcripts of testimony of Rule 30(b)(6) designees, employees whose personnel files were ordered produced under request number five, or appointed corporate representatives in extracontractual litigation. The court will further limit the request to transcripts of testimony given between the dates of January 1, 2013, to January 1, 2021.

Finally, the court notes that Rule 30(b)(6) is sometimes used as a vehicle to prompt a corporate defendant to designate an IT employee so that the

opponent can learn how the corporation's computer system is arranged or a mail-room clerk to determine how the company's mail is sorted and delivered. Defendants need not produce transcripts of its employees or prior employees that are not concerned with the substantive claims asserted in the extracontractual litigation.  Given the limited universe of possible employees who would have given trial or deposition testimony and the limited number of years involved, the court trusts this discovery request will not be unduly burdensome.

Any transcripts produced pursuant to this request shall be subject to the court's protective order.  Any party who wishes to use a transcript or any part thereof shall redact the transcript so as to protect the identity of defendants' insured who may be discussed in the testimony.

### 16.    Request for Documents No. 24

Request for the production of documents number twenty-four seeks "all documents showing any agreement in which any insurance business (other than defendants) may be liable to satisfy all or part of any judgment in this action or to indemnify or reimburse either defendant for payments made to satisfy the judgment.  This includes, but is not limited to, liability coverage or reinsurance agreements providing any sort of indemnification to either defendant, for either contractual or extra-contractual payments."  Docket No. 105-2 at p. 33.

Defendants produced no documents pursuant to request twenty-four, asserting that it was duplicative of an earlier request (number thirty, set one)

and assuring Dr. Clark that defendants are sufficiently solvent to satisfy any judgment he may obtain.  Id.  Dr. Clark agrees he previously asked for this information, but defendants did not provide it because they asserted this case was covered by ERISA and that ERISA did not allow such discovery.  Plaintiff did not move to compel at that time because of the insertion of the ERISA issue.  A year later, the district court held these proceedings were not governed by ERISA.  Docket No. 74.

Rule 26 of the Federal Rules of Civil Procedure require defendant, without plaintiff even asking, to provide "for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment."  Fed. R. Civ. P. 26(a)(1)(A)(iv).  This requirement is not limited to defendants who may not be solvent.  Id.  It applies to any party in a litigation against whom a judgment may potentially be entered.  Id.  The court hereby orders defendants to produce immediately to Dr. Clark any documents answering the description of the above-quoted requirement from Rule 26.

### 17.   Request for Documents Nos. 25 & 26

Request for the production of documents number twenty-five seeks any documents on any electronic storage media available to employees whose personnel files are ordered to be produced under request five containing the words "pulmonary embolism."  Docket No. 105-2 at p. 34.  The scope of the request is January 1, 2012, to the present.  Id.  If defendant asserts responding

to request twenty-five is unduly burdensome, request twenty-six seeks documents identifying the software applications and search capabilities of such software used by the persons whose personnel files must be produced in connection with request number five.  Id. at pp. 35-36.

Defendants have objected to both requests and have not produced any documents.  Id.  As to request twenty-five, defendant allege that their claims management software, NaviLink, does not have the capability to search across multiple claim files to identify all claim records containing a certain phrase. Docket No. 114-16 at p. 3.  Defendants assert they would have to write a new computer program in order to perform such a search and that it would take a dedicated IT team four weeks to draft such a program.  Id.  As to request twenty-six, defendants assert its NaviLink program is proprietary and that the declaration at Docket 114-16 otherwise answers the question posed in request twenty-six.  Docket No. 114-16 at p. 3; Docket No. 114 at p. 55 (defendants' brief at p. 50).

Dr. Clark's reply is two-fold.  First, he notes that defendants have not complied with request twenty-six merely by providing a self-serving declaration. Request twenty-six seeks documents.  At a minimum, Dr. Clark argues he should be given the NaviLink user's manual showing the search capabilities of the NaviLink system.  Docket No. 118 at p. 56 (plaintiff's reply brief at p. 47).

In addition, Dr. Clark points out that request twenty-five is not limited to documents found in claims files.  Id. at p. 57 (plaintiff's reply brief at p. 48). Instead, it asks for emails, intranet resources for claim personnel, training

materials, and any other documents containing the phrase "pulmonary embolism." Id.  Dr. Clark argues the declarations provided by defendants at Docket Nos. 114-14 and 114-15 demonstrate that other data stored in defendants' computer systems are searchable.

Finally, Dr. Clark notes that while outside documents scanned into the claim file from third parties may not be searchable (because defendants choose to not make them OCR format enabling search), the claim notes and information pages are created by defendants themselves and are searchable. Id. at p. 58 (plaintiff's reply brief at p. 49).

The court will grant Dr. Clark's request to compel defendants to respond to requests twenty-five and twenty-six, although the court limits the scope of the requests to the period January 1, 2015, through December 31, 2017. Defendants must produce the documents pursuant to request twenty-five that they are able to provide, and provide the manual for the NaviLink system showing the search capabilities of the system as to request twenty-six.  Any documents produced pursuant to request twenty-six and documents produced from other insureds' claims files pursuant to request twenty-five shall be protected under the terms of the court's previously-entered protection order.

### 18.   Request for Documents Nos. 27 & 28

This request seeks all claim files in which the claimant alleged disability due to pulmonary embolism or in which a pulmonary embolism was involved in causing disability.  Docket No. 105-2 at p. 36.  The scope of the request is January 1, 2010, to May 10, 2017.  Id.  If defendants allege it is unduly

36

burdensome to respond to request twenty-seven, request twenty-eight seeks documents identifying the search capabilities of the claim software in use and the various claim codes available for use by employees using the CAPS or PACE systems or any claim systems that replaced CAPS or PACE.  Id. at pp. 37-38. Defendants objected to both requests and produced no documents.  Id. at pp. 37-38.

Dr. Clark argues the information requested is relevant.  Docket No. 105 at p. 74 (plaintiff's brief at p. 62).  He claims that half of all patients who have a pulmonary embolism experience shortness of breath and fatigue that last more than one year.  Id.  The information requested in request twenty-seven will show that defendants have encountered other claimants who, like Dr. Clark, experienced such chronic symptoms, thus tending to show that they knew or should have known that chronic fatigue can result from a pulmonary embolism.  Id.

Defendants reassert their arguments in connection with requests twenty-five and twenty-six with regard to requests twenty-seven and twenty-eight. Docket No. 114 at p. 55 (defendants' brief at p. 50).

In his reply brief, Dr. Clark points out that his request does not require a word search of defendants' claim files.  Docket No. 118 at p. 59 (plaintiff's reply brief at p. 50).  Dr. Clark asserts that defendants code their claim files by disability type so that they can later generate reports showing how much they pay due to various medical conditions.  Id.  For example, Dr. Clark's own claims file was coded pursuant to the International Classification of Diseases

("ICD"), 9th Edition using the code "415.19," which is the ICD code for "other pulmonary embolism and infarction." Id.  Therefore, Dr. Clark asserts defendants may rely on the code it assigns to claims involving pulmonary embolisms to identify the relevant files.  Id.

The court will grant Dr. Clark's request to compel defendants to respond to requests twenty-seven and twenty-eight, although the court limits the scope of the requests to the period January 1, 2015, through December 31, 2017. Defendants must either produce the documents pursuant to request twenty-seven, or provide the manual for the NaviLink system showing the search capabilities of the system as to request twenty-eight.  Any documents produced pursuant to request twenty-seven and request twenty-eight shall be protected under the terms of the court's previously-entered protection order.

### 19.   Request for Documents No. 29

Request for the production of documents number twenty-nine, as modified after the parties' meet and confer session, seeks all emails and attachments containing the words "recovery" or "recoveries" and "financial" which were sent by or received by Maureen Griffin, Paul Peter, Denise Houser, Lynn McGuiness, Sean Tangney, Maureen Turner, Judith Cohen, Beth Schnars, and James Bress between the dates of January 1, 2015, and January 1, 2018.  Docket No. 105-2 at p. 38.

In response, defendants asserted a long list of objections, and then "subject to and without waiving" said objections, defendants produced responsive documents from November 22, 2016, to May 10, 2017, for

McGuiness, Tangney, Turner, Cohen and Schnars.  Id. at p. 39.  In their brief in opposition to plaintiff's motion, defendants argue that plaintiff's bad faith claim is based on the allegation defendants used biased medical professionals and ignored opinions of treating physicians in evaluating Dr. Clark's claim, not that defendants denied his claim to "save a buck."  Docket No. 114 at p. 56 (defendants' brief at p. 51).  Therefore, defendants assert the request is not aimed at producing relevant documents.

In addition, defendants produced 424 pages of documents for the six-month period it agreed was relevant and for the five employees directly involved in handling Dr. Clark's claim.  Id. at p. 57 (defendants' brief at p. 52).  Defendants assert none of those documents produced have any bearing whatsoever on plaintiff's claim, on defendants' reserves, or on anything related to "recovery" metrics or "recoveries of reserves."  Id.

In his reply brief, Dr. Clark asserts that defendants know that setting targets for reserve recoveries is highly improper and that is most likely why it communicates these matters verbally instead of memorializing them in writing as evidenced by Paul Peter's deposition testimony.  Docket No. 118 at p. 61 (plaintiff's brief at p. 52).  Dr. Clark suggests that emails of higher-level employees are more likely to reflect the kind of improper policy-setting he suspects was used in his case.  Id.  Dr. Clark does not address defendants' assertion that the discovery is irrelevant nor does Dr. Clark refute the assertion that the 424 pages produced already in response to request twenty-nine were not relevant to his claims.

Dr. Clark's reply is self-defeating.  He acknowledges that Peter testified information about reserves was communicated orally.  He does not refute that the partial discovery produced already was unavailing.  And he does not address defendants' relevancy argument.

Dr. Clark's complaint alleges defendants denied his claim for disability benefits based upon the statistical average recovery time for pulmonary embolisms instead of reviewing the claim based on the symptoms and recovery Dr. Clark specifically experienced.  Docket No. 1 at p. 8.  Defendants cited opinions from two physicians in support of their denial of Dr. Clark's claim, and Dr. Clark alleges these physicians were biased.  Id.

Dr. Clark alleges in his complaint that defendants ignored his own treating physician's opinion and records.  Id.  Dr. Clark asserted that defendants improperly based their denial of his claim upon the absence of objective evidence.  Id.  Dr. Clark alleged that defendants previously ran into regulatory trouble by denying claims for lack of objective evidence and employing biased physicians.  Id. at pp. 10-11.  Dr. Clark alleged defendnats did not conduct a reasonable investigation of his claim seeking the truth, but rather seized on isolated pieces of information to give it a pretext for denying his claim.  Id. at p. 11.  There is nothing in Dr. Clark's complaint alleging either defendant manipulated reserves in order to make money.  Docket No. 1.

Dr. Clark asserts he pleaded a claim that defendants engaged in a "pattern and practice of wrongful claims denials."  This is true, but Dr. Clark's pleading states in full: "defendants [sic] conduct is part of a pattern and

practice of wrongful claim denials intentionally seeking to minimize claim payouts through the use of biased medical personnel, and use of schemes such as imposing fictional requirements of objective diagnostic tests as a condition of coverage, and ignoring evidence from claimants and treating physicians." Docket No. 1 at p. 16, ¶ 113.

The court agrees with defendants that Dr. Clark did not plead a claim in his complaint that defendants manipulated its reserves in order to make money. Rather, he claims that defendants used biases doctors and unrealistic requirements to deny coverage. Id. Although Rule 8 requires only notice pleading by giving a "short and plain statement of the claim" (Fed. R. Civ. P. 8(a)(2)), the court does not read Dr. Clark's complaint as pleading a pattern and practice of denying claims by manipulating recoveries. Dr. Clark has failed to show that the evidence sought is relevant to a claim or defense under Rule 26(b)(1).

In addition, given the lack of relevant information contained in the 484 pages produced already and Peter's testimony that reserve-setting was discussed orally and not in writing, the court finds defendants should not be compelled to produce further documents in response to request twenty-nine. Sometimes a seemingly good search formulation, as in Westlaw or Nexis, simply does not turn up the desired results. The court finds request twenty-nine is one such unfortunate attempt at a search. Accordingly, the court denies Dr. Clark's motion to compel further response by defendants to request twenty-nine.

### 20.    Request for Documents No. 30

As modified after the meet and confer session between the parties, request for the production of documents number thirty seeks "[a]ll documents relating to past or future 'recovery' performance or expectations provided or made available to any disability claims personnel described in Request 5 from January 1, [2015] to present."

In response, defendants again asserted a number of objections and then, "subject to and without waiving" said objections, defendants agreed to produce the same documents it produced in response to request number eleven. Compare Docket No. 105-2 at pp. 19-20, with Docket No. 105-2 at p. 41. Those documents were the portfolio metric reports for the last quarter of 2016 and the first quarter of 2017 for Tangney and McGuiness and the weekly tracking reports for the same period for McGuiness.  Id.

Although defendants asserted the same relevancy objection discussed above, it nevertheless produced documents responsive to the request.  Id.; see also Docket No. 114 at p. 58 (defendants' brief at p. 53).

The court notes a protective order is now in place.  Accordingly, the court grants Dr. Clark's motion to compel in part.  The request will be limited to the period from January 1, 2015, through December 31, 2019.  The request will be granted for all employees whose personnel files were required to be produced in response to request number five.  The court orders defendants to provide a new response to this discovery request, signed by defendants' lawyer(s), clearly

indicating whether any documents have been withheld pursuant to defendants' asserted objections.

### 21.   Request for Documents No. 31

Request for the production of documents number thirty-one, as modified following the parties' meet and confer session, seeks "[a]ll documents reflecting the methodology for calculating the expected number of 'recoveries' from January 1, [2015], to [January 1, 2018]."  Docket No. 105-2 at p. 41.

Defendants asserted numerous objections to this request, gave a detailed explanation of how "recoveries" are calculated, then agreed to produce, "subject to and without waiving" its objections, the same weekly report for McGuiness that was produced in response to requests number eleven and thirty.  Docket No. 105-2 at p. 42.

Plaintiff points out that this discovery request is a request for documents, not an interrogatory.  Therefore, he rejects defendants' "self-serving" explanation of the methodology for calculating recoveries and requests that the court order defendants to produce the *documents* that describe the methodology.  Docket No. 105 at p. 83 (plaintiff's brief at p. 71).  Also, the weekly tracking reports defendants *have* agreed to produce may show the expected recoveries, but again, they do not show the methodology behind how those figures are calculated.  Id.

Defendants again point to their explanation of how defendants calculate their reserves as shown in Unum's 2021 Annual Report and argue they have

already produced the documents responsive to this request.  Docket No. 114 at p. 60 (defendant's brief at p. 55).

Plaintiff defined the term "recovery" or "recoveries" in his document requests as follows:  "a reduction in reserves that results from denial of a claim or termination of benefits already being paid on a claim."  Docket No. 105-1 at p. 1.  The document defendants produced from its annual report does not explain how "recoveries" are calculated.  See Docket No. 114-13.  Instead, that document describes how "reserves" are set.  Id.  Plaintiff is inquiring about *recoveries* in request number thirty-one, not *reserves*.  Accordingly, the annual report is not responsive to plaintiff's request.

The court notes a protective order is now in place.  Accordingly, the court grants Dr. Clark's motion to compel in part.  The request will be limited to the period from January 1, 2015, through January 1, 2018.  The request will be granted for all employees whose personnel files were required to be produced in response to request number five.  The court orders defendants to provide a new response to this discovery request, signed by defendants' lawyer(s), clearly indicating whether any documents have been withheld pursuant to defendants' asserted objections.

### 22.    Request for Documents No. 32

Request for the production of documents number thirty-two seeks "[a]ll documents reflecting the financial impact of meeting or failing to meet targeted/expected number of 'recoveries' from January 1, 2015, to [January 1, 2018].  This includes any financial analysis, investor analysis, actuarial

analysis, studies, investigation or summaries thereof."  Docket No. 105-2 at
p. 42.  Defendants produced no documents in response to this request.

Defendants object to this request, professing to not understand what the
terms "financial impact" and "studies" mean.  Docket No. 114 at p. 61
(defendants' brief at p. 56).  Defendants also argue that the request is not
relevant to plaintiff's claims as described in his complaint—the complaint does
not claim that defendants manipulated recoveries in order to make money.
Docket No. 1.

The court has already addressed defendants' relevancy argument with
regard to the facts and claims presented in Dr. Clark's complaint.  Even
applying a broad notice pleading standard, the complaint simply does not
allege a claim or a pattern and practice by defendants to deny claims so as to
increase their "recoveries."  See Docket No. 1 at p. 16, ¶ 113.  The court
declines to grant plaintiff's request to compel disclosures pursuant to request
number thirty-two.

### 23.   Request for Documents No. 35

Request for the production of documents number thirty-five seeks all
scorecards of all defendants' ID directors for the period January 1, 2015,
through January 1, 2018.  Docket No. 105-2 at p. 45.  Defendants asserted a
number of objections, and then produced "subject to and without waiving" said
objections, quarterly scorecards for McGuiness for the period of time between
when Dr. Clark filed his claim and when it was finally denied on appeal.  Id. at
p. 46.

Defendants assert that McGinnis was not only the only ID Director involved in Dr. Clark's claim, but that McGinnis is also the only ID Director in the complete chain of command connected to those who handled Dr. Clark's claim.

The court grants plaintiff's motion to compel in part as to request thirty-five. Defendants are ordered to produce all ID directors' scorecards for any ID director whose personnel file was required to be produced pursuant to request number five for the time period January 1, 2015, to January 1, 2018. As previously discussed herein, this court compelled production of personnel files for those who were directly responsible for handling Dr. Clark's claims and those who were in the chain of command above those claims handlers. If an ID Director was neither involved in handling Dr. Clark's claim nor in the chain of command above those who handled Dr. Clark's claim, defendants need not produce scorecards for any such ID Director. Defendants are directed to provide a new response, signed by their lawyer(s), explicitly indicating whether any documents are being withheld pursuant to an objection.

### 24.   Request for Documents No. 40

Request for the production of documents number forty seeks "[a]ll Performance Plans for AVPs involved in overseeing IDI Benefits and for IDI Benefits Operations Directors from January 1, 2015 to January 1, 2018." Docket No. 105-2 at p. 50. Defendants objected and then, "subject to and without waiving said objections," defendants produced performance plan

templates for Tangney, McGuiness, the AVP in charge of McGuiness, and Turner.  Docket No. 114 at p. 62 (defendants' brief at p. 57).

Dr. Clark argues the documents produced by defendants were merely templates, not the actual performance plans of the individuals involved. Docket No. 105 at p. 89 (plaintiff's brief at p. 77).  Thus, plaintiff asserts the documents are not responsive to the request.  Id.

Defendant argues only one AVP was in the "chain of command" with regard to the personnel who handled Dr. Clark's claim.  Docket No. 114 at p. 63 (defendants' brief at p. 58).

The court grants plaintiff's motion to compel with regard to request number 40 in part.  Defendants must produce the actual performance plan(s) for the AVP who was in the chain of command for handling plaintiff's claim for the period January 1, 2015, to January 1, 2018.  Defendants need not produce performance plans for other AVPs who were not in the chain of command concerning the handling of Dr. Clark's claim.  Defendants shall serve plaintiff with a new response to request number forty, signed by their lawyer(s), explicitly stating whether any documents are being withheld pursuant to any objection.  This document production shall be subject to the court's previously-entered protective order.

### 25.   Request for Documents No. 41

Request for the production of documents number forty-one seeks "[a]ll Scorecards for the individuals described in Request 5 from 2012 to present." Docket No. 105-2 at p. 50.  Defendants objected on many grounds and then

produced, "subject to and without waiving" said objections, the scorecards for Tangney and McGuiness for the period of time between when Dr. Clark filed his claim to when it was denied on appeal.  Id.

The court grants in part plaintiff's request to compel defendants to produce more.  Defendants shall produce the scorecard for every individual the personnel file of which the court ordered to be produced pursuant to request five.  However, the defendants need only produce scorecards for the period from January 1, 2015, through December 31, 2017.  Defendants shall file a new response to request number forty-one, signed by their lawyer(s), explicitly indicating whether any documents are being withheld pursuant to any objection.  Documents produced pursuant to request forty-one shall be subject to the court's previously-issued protective order.

### 26.    Request for Documents No. 44

As modified after the parties' meet and confer session, request for the production of documents number forty-four seeks "[a]ll reports or opinions relating to IDI disability claims provided by James Bress, MD; Judith Cohen, and Beth Schnars, to either defendant or to Provident Life & Accident Insurance Company from January 1, 2015, to January 1, 2018."  Docket No. 105 at p. 92 (plaintiff's brief at p. 80).  Defendants lodged numerous objections to this request and produced no documents.  Docket No. 105-2 at p. 54.

Plaintiff explains that each of the named persons are doctors who work for defendants and who provided opinions that Dr. Clark could return to work

48

weeks after he experienced his pulmonary embolism.  Docket No. 105 at p. 93 (plaintiff's brief at p. 81).

Defendants objects that plaintiff's original request only sought documents authored by Dr. Bress, so by moving to compel as to documents authored by Drs. Cohen and Schnars, plaintiff seeks an order as to a request that was never made.  Docket No. 114 at p. 65 (defendants' brief at p. 60).  Furthermore, defendants object to production of documents authored by Dr. Bress for another entity—Provident Life—which is not even a party herein.  Id.  Defendants also object in that request number forty-four is not limited to opinions regarding pulmonary embolisms.  Id.  Because plaintiff's request seeks opinions from Dr. Bress on any disability, defendants argue, the validity of that opinion will only be apparent after reviewing all the claims and medical records in each case for which an opinion was rendered, thus requiring a series of mini-trials.  Id.  Defendants also argue granting the request invades the privacy of the claimants involved in the other cases in which Dr. Bress rendered opinions.  Id. at p. 67 (defendants' brief at p. 62).

Request number forty-four is clearly relevant, but the court finds it overbroad.  First, the court will only order production of opinions given to the defendants in this case, not to Provident Life.  Second, although Drs. Cohen and Schnars were not named in the original request, that is because plaintiff did not know they were staff physicians employed by defendants until the meet and confer.  As a matter of conserving judicial resources and heading off yet another motion to compel in this case, the court will require defendants to

produce opinions rendered by Drs. Cohen and Schnars as well as Dr. Bress. Opinions from these three doctors need only be produced for the period stated in the request.

The court believes the defendants' assertion that the production should be limited to claims involving pulmonary embolisms is well taken.  Opinions as to whether, for example, breast cancer or a displaced vertebral disc are disabling within the meaning of an IDI policy are of dubious relevance to Dr. Clark's claim, despite plaintiff's anecdotal reference in its reply brief.  Only opinions as to IDI disability claims involving pulmonary embolisms need be produced.

## CONCLUSION

Based on the foregoing facts, law and analysis, this court grants in part and denies in part plaintiff's second motion to compel [Docket No. 101] consistent with this opinion.

Any production of documents or revised responses to discovery requests required of defendants by this opinion shall be served on plaintiff within twenty (20) days of the date of this opinion unless objections are timely lodged with the district court.  If objections are lodged with the district court, defendants' obligation to produce documents and provide new responses will be suspended until the district court resolves the objections.

Plaintiff seeks attorney's fees for the bringing of this motion to compel in accord with Fed. R. Civ. P. 37.  The court orders plaintiff to serve defendants within twenty (20) days of the date of this opinion a motion for attorneys fees

together with a detailed accounting of the time spent in preparing and defending this motion.  Defendants shall have twenty-one (21) days to respond in opposition thereto.  Plaintiff may file a reply within fourteen (14) days.  If objections are lodged to this opinion, all litigation over attorneys fees will be suspended until the outcome of such objections is known.  If objections are timely filed, plaintiff shall hold in abeyance any motion for attorney's fees until the objections are resolved.

### NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED November 28, 2022.

BY THE COURT:

_Veronica L. Duffy_
VERONICA L. DUFFY

United States Magistrate Judge